THE BOARD OF PUBLIC EDUCATION FOR THE CITY OF AMERICUS *et al.*, plaintiffs in error, *vs.* WILLIAM W. BARLOW *et al.*, defendants in error.

1. The Legislature, under the constitutional requisition to provide a thorough system of general education, may grant the power to county authorities or municipal corporations to levy a tax in aid of such system within their several territorial limits.

2. A board of education may be appointed by the Legislature within such limits, with power and authority to use and appropriate the school funds thus raised in connection with what may be derived from the general fund provided by the State, and to superintend and control the schools that may thereby be established, the same being under such supervision of the State School Commissioner as by law may be provided. The fact that such board may be created a body corporate in the Act appointing it, does not affect its right to exercise the authority given to it as a board of education.

The Board of Public Education, etc., *vs.* Barlow *et al.*

3. The 18th section of the Act of February 22, 1873, entitled "An Act to amend and revise the several Acts granting corporate authority to the city of Americus, and to establish and consolidate the same, and for other purposes therein named," is inconsistent with the third section of the Act of February 13th, 1873, entitled "An Act to establish a permanent board of education for the city of Americus, and to incorporate the same, and for other purposes," in so far as the latter Act provides for levying a tax, and to that extent said third section is repealed.

4. All of said Act, except that part thereof creating the local Board of Education, and giving it authority to establish, and regulate, and superintend, the public schools in said city, and to receive the proportionate part of the general State fund coming to said schools, is void, because said other portions of said Act refer to a subject matter different, not only from what is contained in the title, but from the other part of the same Act, to-wit: it grants power to the Mayor and City Council to levy a tax and issue bonds, and exempts the city from county taxation for public schools, and is obnoxious to that extent to that provision of the Constitution which says, "nor shall any Act or Ordinance pass which refers to more than one subject matter, or contains matter different from what it contains in the title thereof."

5. The Board of Education created by said Act of 13th of February, 1873, has no authority of law to require the Mayor and City Council of Americus to levy and collect a tax as is provided by said Act. Nor can said Mayor and Council levy and collect a tax as a public school fund, except by authority of the 18th section of the Act of 22d of February, 1873, which tax, if collected, may, by virtue of said section, be used at the discretion of the Mayor and City Council for the purpose for which it was levied.

Constitutional law. Laws. Education. Taxes. Before Judge HILL. Sumter County. At Chambers. June 28th, 1873.

William Barlow and other tax payers of the city of Americus filed their bill against the Board of Public Education for the City of Americus and the Mayor and City Council of said city, making substantially the following case:

On February 13th, 1873, James M. Clark, the present Judge of the Superior Courts of the Southwestern Circuit, embracing the county of Sumter, Hiram L. French, the Mayor of said city of Americus, and others, were constituted by an Act of the General Assembly of the State of Georgia a per-

manent Board of Public Education for said city. By the provisions of said Act, said board, or a majority of them, were fully authorized to devise, establish and alter, from time to time, a plan and system of education for the children in said city, to superintend the same, to provide school houses, etc., and to make by-laws, rules and regulations, etc., for their own government. By the 3d section of said Act, full power and authority was granted to them to require the Mayor and City Council of Americus to levy a tax of one per cent. or less, upon all the taxable property of said city. Said Act pretended further to vest in said board, to an unlimited extent, the right to raise money by issuing bonds, or in any other manner except by direct taxation. By the provisions aforesaid, the Mayor and City Council are left without discretion in the levying of said taxes, or in raising the amount of funds which may be required, but are compelled to levy and collect the tax, or to negotiate the bonds, as may be required of them by the said board of education. The board have fully organized, and propose to levy a tax of one per cent. upon the taxable property of said city, and to require the collection of the same by the Mayor and City Council, and otherwise, by negotiating bonds and using the credit of said city, to raise a sufficient sum of money to build the school houses and to commence operations under said Act.

Complainants charge that said board have no authority under the Constitution of the State to make said assessment and to require said money from the tax payers, nor have the Mayor and City Council any right to collect the same for any such purpose. The Constitution protects the property of the citizen from all taxation for educational purposes, except to provide a system of general education embracing the whole State; nor can property be taxed for such purpose except upon the inadequacy of the special appropriations, and in that case the General Assembly alone can levy a general tax. The State cannot levy a general tax to support a common school system, until it shall appear that the poll tax, the specific tax on shows and exhibitions, and on the sale of spir-

ituous liquors, are insufficient for the purpose; nor can the General Assembly delegate this power to a corporation, nor to school commissioners, the same being reserved alone to the Legislature, as above stated.

If this tax is allowed, complainants will be double taxed, for they will be compelled also to contribute to the support of the common school system of the State.

Prayer, that the Board of Public Education be restrained by the writ of injunction from proceeding any further in requiring the Mayor and City Council to raise money for the purposes aforesaid, by taxation or otherwise, until the further order of the Court. That the writ of prohibition may issue directed to the Mayor and City Council of Americus, prohibiting them, upon any requisition of said Board of Public Education, from negotiating the bonds of said city, or from otherwise raising any money on said school enterprise, or from levying a tax on the property of complainants. That the writ of subpœna may issue, etc.

The defendants, the Board of Public Education, and the Mayor and City Council of Americus, filed a joint answer in which they admitted most of the allegations in the bill. They denied that complainants had no notice of the contemplated passage of said Act, and showed that a public meeting had been called through a newspaper published in said city of the friends of education, and that, after a considerable debate at such meeting, a committee had been appointed to memorialize the General Assembly upon the subject of a free school system in said city, and that the Act complained of was the result of such action. They further showed that the proceedings of said meeting were duly published, and charged that the complainants must have had notice thereof.

The Board of Public Education admit that they have organized, but deny that they have ever proposed or threatened to levy a tax of one |per cent. upon the taxable property of said city, and require the collection of the same by said Mayor and City Council, or that they have ever had before them the necessity or propriety of otherwise raising sums of money suf-

ficient to build the school houses, and to commence operations under the said Act.   They further allege that, before any notice of the application for injunction, they passed a resolution requiring the Mayor and City Council to levy a tax of one-half of one per cent. upon the taxable property of said city, for the purpose of carrying on said schools.   They do not now contemplate building school houses, but deem it best to rent such buildings as are suitable to the establishment of the public graded schools.   They believe that such tax, together with such amounts as will be received from the State and the Peabody fund, will be sufficient to sustain the necessary schools for the present.

Both defendants refer to said Act as authority for all their acts in the past and contemplated action in the future.

The Honorable James M. Clark, the Chancellor of the Circuit embracing Sumter county, being a member of the Board of Public Education for the city of Americus, the application for the writs of injunction and prohibition, after due notice, came on to be heard before Chancellor Hill, of the Macon Circuit, on June 28th, 1873.   He ordered that the writs of injunction and prohibition both issue, as prayed for.   To this ruling, the defendants excepted.

C. T. GOODE; N. A. SMITH, for plaintiffs in error.

W. A. HAWKINS, for defendants.

TRIPPE, Judge.

1. The Constitution of the State declares that " the General Assembly   *   *   *   shall provide a thorough system of general education, to be forever free to all children of the State, the expense of which shall be provided for by taxation, or otherwise:" Article VI. paragraph 1.   The third paragraph of the same Article, after setting apart certain taxes and funds therein specified for the support of common schools, provides further: "And if the provision herein made shall at any time prove insufficient, the General Assembly shall have power to

levy such general tax upon the property of the State as may be necessary for the support of said school system." The 27th and 28th paragraphs of Article I. are as follows: "The power of taxation over the whole State shall be exercised by the General Assembly only to raise revenue for the support of government, to pay the public debt, to provide a general school fund, for common defense, and for public improvement; and taxation on property shall be *ad valorem* only, and uniform on all species of property taxed. The General Assembly may grant the power of taxation to the county authorities and municipal corporations, to be exercised within their several territorial limits." The argument against the power of the Legislature to confer authority on counties and municipal corporations to levy taxes for free school purposes is about this: That the purposes for which the local authorities can be authorized to tax, cannot go beyond those for which the Legislature is, by the Constitution, empowered to levy taxes; that, as the General Assembly has the power of taxation to support the government, to pay the public debt, and for public improvements, so they may grant the power to local authorities to levy taxes for the support of the local government, to pay its debt, and for its public improvements; but that the other two objects for which the power of taxation is given to the General Assembly, to-wit: to provide a general school fund and for common defense, do not in any way appertain to the duties of the local governments. Granting that the measure of the power which may be conferred on the local governments, as generally stated above, is correct, the conclusion is not logical, nor does it follow from any rule given for the construction of statutes or the Constitution. The real point in it might be well made to the framers of a Constitution, or to the law-giver whilst enacting the statute. It may be a question of policy whether such power should be conferred on the General Assembly; or, if conferred, whether it should be exercised by granting it to the county or municipal governments. The power of taxation in the Legislature to provide a general school fund, is not for a purpose of a general or State charac-

ter any more than the other three which have been specified, to-wit: to support the government, to pay the public debt, and for public improvements. They mean the government, the public debt, and public improvements of the State. If, from those two provisions in the Constitution, it be conceded, and no one denies it, that the power of taxation can be granted to local governments for such purposes as supporting themselves, paying their debts and making public improvements, the same rule of construction could not inhibit the grant to tax themselves for their public schools, especially when that would be in aid of the declared policy of the State, as expressed in its organic law.

2. We can see no reason why a board of education may not be appointed by the Legislature within the limits of the local government, with power to use and appropriate the school funds thus raised, in connection with what may be derived from the general fund provided by the State, and with the further power to superintend and control the schools thus established. Such a board would be but agents of the State, and subject to its control, at least so far as what may be received from the State school fund. The fact that such a board may be created a body corporate in the Act appointing it, does not affect its right to exercise the authority given to it as a board of education.

3. The 18th section of the Act of February 22d, 1873, entitled "An Act to amend and revise the several Acts granting corporate authority to the city of Americus," etc., is inconsistent with the 3d section of the Act of February 13th, 1873, entitled "An Act to establish a permanent Board of Education for the city of Americus," etc., in so far as the latter Act provides for levying a tax. The 18th section of the first mentioned Act is, "that said Mayor and City Council, or a majority of them, shall have full power and authority to levy and collect a tax on all real or personal property within said city of one per cent., as a public school fund, to be used at their discretion." The 3d section of the last recited Act provides "that the Mayor and City Council of Americus shall

have power and authority to impose and collect the requisite taxes, and are hereby authorized to issue and negotiate the requisite bonds, or otherwise engage the credit and apply the services of the city to raise such revenue for the establishment and maintenance of such public schools as may be established by said Board of Education, *and as may be required of them for said purpose.* If this last section was intended, as it seems to have been, and as is claimed for it, to give authority to the Board of Education to order the city authorities to levy and collect a tax to be appropriated as they might direct, then the 18th section of the Act of February 22d is in conflict with it. That section gives the power to the Mayor and Council to levy and collect a tax and use it at their discretion. There is no restriction on their authority, no subjection of them to the control of any other tribunal. The only limitations are, that the tax must be for a public school fund, and must not exceed one per cent. The two Acts certainly were not intended the one to authorize the Mayor and Council to levy and use one tax at their discretion, and the other that they should be compelled to levy another tax at the command of the Board of Education, and that the latter tax should be subject to its control and direction. The Act of February 22d gives the power to the Mayor and Council untrammeled by any superior authority over them, and having been passed after the other, abrogates the former to the extent of such conflict.

4. But the 3d section, and some other provisions of the Act of February 13th, are obnoxious to a still more serious objection. Paragraph 5, section 4 of the third Article of the Constitution declares: "Nor shall any law or ordinance pass which refers to more than one subject matter, or contains matter different from what is expressed in the title thereof." The title is, "An Act to establish a permanent Board of Education for the city of Americus and to incorporate the same, and for other purposes." One subject matter, and the great object of the Act, is to create a local board of education for the city and to give it authority to establish, regulate and su-

perintend the public schools, and to receive the portion of the general State fund coming to said schools. Another subject matter is the grant of power to the Mayor and Council of the city to levy taxes and issue city bonds, and further, the exemption of the citizens of the city from county taxation for public schools.

In *Prothro & Kendall et al., vs. Orr,* 12 *Georgia* 36, it was held that the 5th section of the Act of 1809, entitled "An Act to authorize the clerks of the Courts of Ordinary, sheriffs, coroners and surveyors to hold their office during the intervention between the election and commissioning of their successors, and to regulate the transfer of papers and money," was variant from the title and void. The 5th section made it the duty of the officers elected to apply to the Executive for their commissions within twenty days after their election.

In *The Justices, etc., vs. Hunt et al.,* 29 *Georgia,* 158, STEPHENS, Judge, makes a strong argument illustrating this point. The title of the Act was "An Act to appoint county treasurers and define their duties." A section in the Act gave the Justices of the Inferior Court power to issue executions against defaulting treasurers. Though the judgment of the Court was put on another ground, the Judge pronouncing the opinion gave it as his decided conviction that the section referred to was unconstitutional, because it was a total departure from the caption of the Act. He said, " to issue an execution against them (the treasurers) is a totally different thing from appointing them or defining their duties." With equal force may it be said that the power given to the Mayor and Council of Americus to levy a tax and issue bonds, and the exemption of the citizens of the city from county taxation, are totally different things from creating an independent Board of Education, and defining its powers as such a board. So in *Sanders vs. The Town Commissioners of Butler,* 30 *Georgia,* 679, it was decided that a statute, under the title of "An Act to regulate the rates of tavern licenses in this State," could not, in the body of the Act, confer a power to grant the license, for it would be variant from the title.

The Board of Public Education, etc. *vs.* Barlow, *et al.*

We are aware of what has been held to be the effect of the words, "and for other purposes," in the title of an Act: *Martin vs Broach,* 6 *Georgia,* 21, and as recognized in the case in 12 *Georgia, supra.* But it will be recollected that those cases were decided before the Constitution of 1868 went into operation, and also before the adoption of the Constitution of 1861. The Constitution of 1861, for the first time, contained the provision as it now stands in the present Constitution. The clause in the old Constitution, under which these decisions were made, simply prohibited any Act from containing matter *different* from what is expressed in the title thereof. With the prohibition going only to that extent, it might be correctly said that when the title contained the broad words, "and for other purposes," it made itself so comprehensive as that nothing in the body of the Act could be different from the title. And, accordingly, it was held, and so practiced by the Legislature, that those words gave an unlimited capacity to the body of the Act.

But the evil of such a practice was seen, although it has been so often said that those words were sufficient to call the attention of members of the Legislature, on the passage of bills, to the necessity of looking to all the enacting clauses, as the title gave notice that the object of the Act was not fully given in the caption. To remedy what was believed to be pernicious, even with those words of notice, the constitutional prohibition has been enlarged so as to inhibit the passing of "any law *which refers to more than one subject matter,* or contains matter different from what is expressed in the title thereof." Does not this close the door against any force or effect being given to the words, "for other purposes?" If those words were once necessary to permit the introduction of matter in the bill, different from what was embraced in the other portion of the title, would not that very thing show now that the bill would thereby become obnoxious to the other clause prohibiting more than one subject matter? The necessity of such words, under the provision as it formerly stood, to prevent the bill from containing matter different from the

title, could only arise because such matter is something different from what had already been expressed. It shows that something more than one subject matter is intended. If so, although it was allowed under the clause as it was formerly, it cannot now be done. The expression of both or many matters in the title, whereby the bill might be relieved from any conflict with the last branch of the clause, would plainly exhibit its direct antagonism to the first.

5. Our conclusion is, that the Board of Education, created by the Act of February 13th, has no authority of law to require the Mayor and City Council of Americus to levy and collect a tax, as is provided by said Act. Nor can said Mayor and Council exercise such power for school purposes except by virtue of the Act of February 22d. If such tax be collected, it may be used by the Mayor and Council, at their discretion, for the purposes for which it was levied.

The judgment of the Court below is affirmed, with modification accordingly.