MAYOR AND COUNCIL OF MACON *v.* HUGHES *et al.*

1. Where an act was entitled, an act to amend the charter of a named city by incorporating as a part thereof certain described contiguous territory; to define the duties and powers of the municipal authorities in the annexed territory, "and for other purposes," any legis-

110　795
113　941

110　795
114　281
114　815
114　818
114　876
114　885
110　795
117　564

110　795
121　73

110　795
123　609
123　864

110　795
124　16
e124　76

110　795
128　50

lation could constitutionally be embodied in the act which was germane to the general subject of amending the charter of the city.

2. Equity will enjoin municipal authorities from holding an election to determine whether a given territory shall be annexed to the city, when the ordinance calling the election was plainly ultra vires and there was no warrant in law for holding the election.

Argued April 24, — Decided May 12, 1900.

Injunction. Before Judge Felton. Bibb superior court. March 28, 1900.

*Minter Wimberly, Hall & Wimberly, John P. Ross, Marion W. Harris, Park & Gerdine, M. P. Callaway,* and *J. M. Moore,* for plaintiff in error. *Hardeman, Davis & Turner, Guerry & Hall, Dessau, Harris & Birch,* and *M. G. Bayne,* contra.

COBB, J. On November 21, 1893, the General Assembly passed an act creating a new charter for the City of Macon. Acts 1893, p. 240. The 87th section of that act declared, "That territory contiguous to the corporate limits of the City of Macon may be incorporated as a part of said city by the consent of the Mayor and Council of the City of Macon and of a majority of the persons residing in the said territory, qualified by law to vote for members of the General Assembly of this State;" and provided for the manner in which the election should be conducted and the result declared, and the terms upon which the territory should be annexed if the result of the election was in favor of annexation. In 1897 the General Assembly passed an act having the following title: "An act to amend the charter of the City of Macon by incorporating as a part of said city a portion of the territory of North Macon, the same being a portion of the lands recently connected with the city by the Spring street bridge crossing the Ocmulgee river, and containing about —— acres, and more fully described by metes and bounds in said act; to define the powers and duties of said mayor and council in said territory so incorporated, and for other purposes." Acts 1897, p. 271. The first section of that act provided for the incorporation within the limits of the City of Macon of the territory referred to in the title. The second section provided that it should be unlawful to sell liquor within the territory thus brought within the limits of the city. The third section de-

clared, " That the charter of the city of Macon appearing in the act approved November 21, 1893, be amended as follows, to wit : That section eighty-seven of said act, which reads as follows, be taken from said act, and said entire section be, and the same is, hereby repealed;" the section thus declared to be repealed being quoted in full. The authorities of the City of Macon have passed an ordinance providing for an election under the 87th section of the act of 1893, and certain property-owners of the territory sought to be annexed filed a petition praying that the election be enjoined. Certain persons who are residents and taxpayers of the City of Macon and who are owners of property within the territory sought to be annexed were made parties to the petition, and united in the prayers of the original petition. The judge, after a hearing, granted the injunction, and error is assigned upon this ruling.

1. One ground upon which the injunction was sought was that the Mayor and Council of the City of Macon had no authority to call the election, for the reason that the 87th section of the act of 1893 was no longer of force, having been in terms repealed by the act of 1897. The reply of the defendants to this position was, that the third section of the act of 1897 was inoperative, for the reason that it contained matter different from what was expressed in the title of the act. Is there any language in the title of the act of 1897 which would be sufficient to authorize the incorporation into the act of the third section therein contained ? This question is answered in the affirmative by the application to the facts of this case of the former rulings of this court. The constitutional provision prohibiting the passage of laws containing matter different from what is expressed in the title appears for the first time in the constitution of 1798 in the following language : "nor shall any law or ordinance pass containing any matter different from what is expressed in the title thereof. " Con. 1798, art. 1, sec. xvii, Cobb's Dig. 1114. In *Mayor of Savannah* v. *Commissioners,* 4 *Ga.* 26, 38, Judge Lumpkin refers to the history of this clause in the following language: "I would observe that the traditionary history of this clause is, that it was inserted in the constitution of 1798 at the instance of General James Jackson,.

and that its necessity was suggested by the Yazoo act. That memorable measure of the 17th of January, 1795, as is well known, was smuggled through the legislature, under the caption of an act 'for the payment of the late State troops,' and a declaration, in its title, of the right of the State to the unappropriated territory thereof, 'for the protection and support of its frontier settlements.'" In *Martin* v. *Broach, 6 Ga.* 21, it was held: "Where the title specifies some of the objects for which the statute was passed, and contains this general clause —'and for other purposes therein contained,' portions of the act not specially indicated in the title are, nevertheless, good, under this general clause." The constitutionality of two acts of the General Assembly, one of them approved December 15, 1810, was called in question in that case. The title of the act of 1810 was in the following words: "An act for the more effectually securing the probate of wills, limiting the times for executors to qualify, and widows to make their election, and for other purposes therein mentioned." Prince's Dig. 239. Section 8 of the act provided that the court of ordinary should have authority, upon complaint made by the security of any guardian or administrator, that his principal was mismanaging his estate, to pass an order requiring such administrator or guardian to show cause why the security should not be discharged and the administrator or guardian compelled to give new security, or their administration or guardianship revoked; and that upon the revocation of such administration, or upon the revocation of any letters testamentary as provided by law, and granting administration de bonis non, suits brought by or against the former administrator should not for this cause be abated, but, the removal of such administrator or executor being suggested of record, a scire facias might issue to make the administrator de bonis non a party to the record. It was held that the title was sufficiently broad to authorize the enactment of the section just referred to. In reference to this clause of the constitution Judge Lumpkin in the opinion says: "This clause does not require that the title should contain a synopsis of the law, but that the act should contain no matter *variant* from the title. Now, the title to each of these statutes, after enu-

merating certain objects for which they were passed, adds, 'and for other purposes therein mentioned.' This was sufficient to prevent surprise — to induce the members, either to call for the reading of the whole of the bill, or to look into it, during its progress through the legislature."

There was nothing in the title of the act of 1810 which in terms put any one on notice that legislation in reference to administrators or guardians was in any way contemplated. The language of the title indicated that the legislation proposed was to refer to wills, executors, and the right of widows to make an election. The 8th section related to a subject-matter entirely different from anything indicated by the title; and in order to uphold this section of the act it was absolutely necessary that the words, "and for other purposes," should be given sufficient significance to include the matter dealt with in that section. The court, as has been seen, so held. It is to be noted that at the time of the passage of the act of 1810 there was no provision in the constitution prohibiting the passage of laws relating to more than one subject-matter. As many different subject-matters could be embraced in one bill as the General Assembly desired, provided the title of the act was sufficiently broad to embrace them. The effect, therefore, of the decision just referred to was to hold that if one object of legislation was stated in the title, and this was followed by the words, and for other purposes, the incorporation into the body of the act of any law within the constitutional power of the legislature was authorized. It is neither profitable nor desirable for us to question the soundness of this ruling. This construction of the constitutional provision has been acquiesced in and followed as a precedent for more than fifty years. Many laws have, doubtless, been enacted upon its authority, and rights have grown up thereunder which ought not now to be disturbed. If there ever was a case where the doctrine of stare decisis should be applied, this is certainly one. That such a construction may impair seriously the beneficial results intended to be accomplished by the framers of the constitution is, perhaps, true, but it is too late to urge this is as a reason for adopting a different construction and one apparently more in consonance with

the purpose for which the provision was adopted. Four constitutions have been adopted by the people of the State since the decision referred to, which readopt in identical language this provision of the constitution of 1798. It must be presumed that this provision in the subsequent constitutions was placed there with a full knowledge of, and subject to, the construction which had been placed by the court upon the same language in the constitution of 1798. Had any of the conventions which adopted these constitutions intended to change the construction which had been placed upon these words, different language would certainly have been employed. See in this connection *Hill* v. *State,* 64 *Ga.* 470, 471. In *Prothro* v. *Orr,* 12 *Ga.* 36, certain parts of two acts were declared unconstitutional on the ground that they contained matter different from what was expressed in the titles. Judge Lumpkin says, arguendo, in the opinion: "Had the title been general—as, for instance, an act in relation to the public officers, or for the particular objects designated, *and for other purposes,* — the construction would have been different. But here the title is *definite,* and therefore necessarily limited. And to permit other and totally different matter to be incorporated would be to let in the very mischief intended to be prevented, and thus render the constitution of none effect."

There appeared for the first time in the constitution of 1861 the provision, that no law should pass referring to more than one subject-matter. This provision was contained in the same section which readopted the law in reference to the title of acts, and was in the following language: "Nor shall any law or ordinance pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." A provision in the same language is embodied in the constitutions of 1865, 1868, and 1877. See Code of 1861, § 4936; Code of 1868, §§ 4930, 5139; Civil Code, § 5771. The effect of adding this provision in reference to subject-matter simply requires the General Assembly to deal with one subject of legislation at a time. It can in no way be construed to affect or change the interpretation placed by the court upon the provision as to what shall be contained in the title of an act, except, of

course, that the title must not refer to more than one subject-matter. Prior to the constitution of 1861 the words, "and for other purposes," would authorize legislation upon any subject with which the legislature could constitutionally deal. Since 1861 these words will not authorize legislation upon any subject save one which is germane to the general subject embraced in the title. Such we understand to be the construction placed upon the constitutional provision since the incorporation of the clause relating to subject-matter. See *Board of Education* v. *Barlow,* 49 *Ga.* 232. In *Black* v. *Cohen,* 52 *Ga.* 621, it was held: "Where the title of an act specifies some of the objects for which it was passed and contains the general expression, 'and for other purposes,' portions of the act not especially indicated in the title are nevertheless valid." The title of the act then under consideration was "an act to authorize the mayor and council of the City of Rome to subscribe not exceeding $100,000 to stock in the Memphis Branch Railroad upon certain conditions, and for other purposes." The 4th section of the act provided that the mayor and council might subscribe for a like amount of stock in any other railroad that might be projected, which had its terminus in the City of Rome, provided the question be submitted to, and approved by, the qualified voters of the city. The foregoing act was amended; the title of the amendatory act being "an act to amend an act to authorize the Mayor and Council of the City of Rome to subscribe not exceeding $100,000 of stock in the Memphis Branch Railroad upon certain conditions, and for other purposes." The second section of the amendatory act declared that all of the provisions and stipulations of said amended act, and the amendments thereto, be of full force in relation to the subscription of the City of Rome of $100,000 to the North and South Railroad. Chief Justice Warner, in referring to the clause of the constitution prohibiting the passage of a law containing matter different from what is expressed in the title, says: "This court held, in *Martin* v. *Broach,* 6 *Georgia Reports,* 21, that where the title of the act specifies some of the objects for which the act was passed, and contains this general clause, 'and for other purposes,' portions of the act not specially indicated in the title

are nevertheless good, under this general clause; and we adhere to this ruling of the court in construing these words in the constitution of 1868, so far as it regards the title of the act.    The title of the act under consideration, and the amendment thereto, contains the words, ' and for other purposes,' and therefore it is not void because it contains matter different from what is expressed in the title thereof. "    This ruling is certainly very broad.    There is absolutely nothing whatever in either act to indicate that the subject of subscription to stock in any other railroad than the Memphis Branch Railroad was to be dealt with in the act; but, construing the title to relate generally to the subject of subscription to stock in railroads, it was held that the words, and for other purposes, were sufficient to permit legislation authorizing the mayor and council to subscribe for stock in an entirely different railroad from that named in the title.

In *Butner* v. *Boifeuillet,* 100 *Ga.* 743, the question arose as to whether a title in the following words: " An act to amend the charter of Macon, relating to the law now governing board of public works, the police commission, the fire commission; to provide for deficiencies in the revenue of the city; to provide for compensation of the board of health; and giving authority to the mayor and council providing for the paving of streets, alleys, and sidewalks of said city, and for other purposes, " was sufficient to authorize the incorporation into the act of a section which repealed section 32 of the act of 1893, providing a new charter for the City of Macon.    Section 32 was in the following language:    " The police force of the city shall consist of a chief of police, two lieutenants, and such other officers and men as the mayor and council may by ordinance prescribe. "    It was held that the title was sufficiently broad for this purpose.    Mr. Justice Atkinson in the opinion says:    " It will be seen by reference to the title of the act, which is hereinbefore set forth, that it was designed to be an act to amend the charter of Macon in certain parts therein stated, and generally ' for other purposes.' The office of chief of police, as we have seen before, was a distinctive municipal office existing under the charter of the City of Macon.    It could not fall properly within either of the particular subjects specified in the title of the act, and the objection

that the act is unconstitutional, in so far as it undertakes to abol-
ish the office of chief of police, is well founded, unless it is met
by the use of the words, 'for other purposes,' expressed in the
title.   Different opinions may prevail elsewhere as to the value
of these words as descriptive terms in the title of an act of the
General Assembly; they have in this State a fixed legal signifi-
cance, and the courts in passing upon the constitutionality of
the acts of the General Assembly are not authorized to disregard
it.   As early as the year 1849, in the case of *Martin* v. *Broach,*
6 *Ga.* 21, this court, in considering the constitutionality of an
act, held, in dealing with an objection that the body of an act con-
tained matter different from that expressed in the caption:
'Where the title specifies some of the objects for which the
statute was passed, and contains this general clause, "and for
other purposes therein contained," portions of the act not spe-
cially indicated in the title are, nevertheless, good under this
general clause.'   There has been no substantial departure from
this construction of the constitutional provision in question,
and it was distinctly recognized and reaffirmed in the case of
*Black* v. *Cohen,* 52 *Ga.* 621, as well as in numerous other cases
which it is not necessary to cite here; and this notwithstand-
ing the apparently conflicting view presented by Judge Trippe
in delivering the opinion of the court in the case of *Board
of Education* v. *Barlow,* 49 *Ga.* 232.   Such words may well
include and render constitutional incidental provisions which
are germane to, and bear a generic relation to, the general
subject expressed in the title."   In *Burns* v. *State,* 104 *Ga.*
544, it was ruled:   "Provisions germane to the general subject-
matter embraced in the title of an act, and which are designed
to carry into effect the purpose for which it was passed, may be
constitutionally enacted therein, though not referred to in the
title otherwise than by the use of the words 'and for other pur-
poses.'"   The act dealt with in that case was entitled, an act
"to prescribe the method of granting license to sell spirituous or
intoxicating liquors in the county of Screven, and to increase
the fee for said license to ten thousand dollars, and for other
purposes."   It was held that the title was sufficiently broad to
authorize the incorporation into the act of a section making it

an indictable misdemeanor to sell in the county named any spirituous or intoxicating liquors without having first obtained a license from the proper authorities. The case was distinguished from *Sasser* v. *State*, 99 *Ga.* 54, in that the title of the act involved in the latter case did not contain the words "and for other purposes."

Applying the principle of the decisions cited to the case now under consideration, but one conclusion can be reached, and that is, that the general subject stated in the title of the act of 1897 was the amendment of the charter of the City of Macon, and that under the words, "and for other purposes," occurring in the title, any legislation germane to this general subject could be enacted, notwithstanding this general purpose was apparently limited by other words in the title. The third section of the act of 1897 is not subject to the objection made to it in the present case, and the 87th section of the act of 1893 is no longer of force.

2. It is contended that the court below was without jurisdiction to grant the injunction prayed for, for the reason that a court of equity will not enjoin the holding of an election, which is a political and ministerial function, and consequently not controllable by the courts. The general rule undoubtedly is that courts of equity will not interfere in matters of elections. To say that this rule is without exception seems to be purely arbitrary. Why should not such an election as the one now under consideration be enjoined? It is not an election in which a public office is involved, the right to hold which may be easily and effectually tested by the writ of quo warranto, but it is an election to determine whether or not given territory shall be annexed to the City of Macon. The city authorities have no power to call the election, their ordinance attempting to do so is absolutely void, and any election held thereunder would be likewise void. Some of the petitioners are residents and taxpayers of the City of Macon, and they predicate their right to the injunction on the ground that illegal expenses will be incurred by reason of the election, of which expenses they will be required to bear their proportionate part. This was a sufficient ground for the granting of the injunction at their instance. They have

no adequate remedy at law to protect themselves from this unlawful expense, and it is inconceivable that they have no standing in a court of equity to enjoin an ultra vires act which will result in imposing upon them this unlawful burden. It is no reply to this, as was insisted in this case, that an amount necessary to defray the expenses of the election had been raised by private subscription. It may be that the money is at this time in the hands of the city authorities to be used for this purpose, and doubtless they would have so applied it; but while this is true it is also true that between now and the election something might happen to render inadvisable this use of the money and the same be refunded to the contributors. The safer and better rule in such a case is to deal with the parties, not so much on the theory of what they may or will do, but on what they can do.

While the above is a sufficient answer to the question of jurisdiction, and the injunction was properly granted, irrespective of the rights of the property-owners of the district proposed to be annexed to have the writ issued, there would seem to be no good reason why on principle they alone could not have maintained the petition. Why should they be required to wait until they have been treated by the city as its citizens and subjected to taxation as such and to all of the other burdens imposed upon the citizens? If they resist, they do so at the risk of having their persons and their property seized. Their property may be seized for taxes, and their persons may be seized for a violation of some penal ordinance of the city. A multiplicity of suits would thus arise, and irreparable damage might be done. While equity will not enjoin the action of a municipal corporation while proceeding within the limits of its well-defined powers, it has jurisdiction to restrain it from acting in excess of its authority and from the commission of acts which are ultra vires. 2 High, Inj. § 1241. See also *Wells v. Atlanta,* 43 *Ga.* 67; *Keen v. Waycross,* 101 *Ga.* 588; Chicago *v.* Collins, 51 N. E. Rep. (Ill.) 907; 1 Pom. Eq. 347, § 260. It is said, however, that the calling of an election which is ultra vires stands upon a different footing. But if a court of equity will enjoin a municipal corporation from issuing bonds, or erecting buildings, and similar acts, when they are unauthorized,

why may it not enjoin the holding of an election for which there is no warrant in law? No satisfactory reason has been suggested and none occurs to us. In the recent case of Layton v. Mayor, 23 So. Rep. 99, the Supreme Court of Louisiana held that equity would enjoin the holding of an unauthorized election called for the purpose of ascertaining the popular will on the subject of annexation of territory to the city, and this too at the instance of an owner of property in the territory proposed to be annexed. That this decision and the one we now make is against the weight of authority is perhaps true, but nevertheless we think it right on principle. An examination of many of the decisions will show, however, that they were dealing with elections which appeared to be authorized by law, and there were merely some irregularities in the manner in which they were called or were being conducted. In such cases we also agree that equity ought not to interfere. A number of decisions of this court were referred to on the briefs of counsel, but we think none of them rule anything to the contrary of what is said above.

*Judgment affirmed.   All concurring, except Fish, J., absent.*