MAYOR AND COUNCIL OF AMERICUS *v.* PERRY *et al.*

1. Under "an act entitled an act to amend, revise, and consolidate the several acts granting corporate authority to the City of Americus; to confer additional powers upon the Mayor and City Council of Americus; to extend the corporate limits of said city, and for other purposes," it was competent for the General Assembly to provide for a board of police commissioners which should have the exclusive control of the police officers of the city; and a provision in the act to this effect, and also naming the first members of the board, prescribing the manner in which their successors should be chosen, and setting forth their duties and powers, was not subject to the objection that it contained matter different from what was expressed in the title of the act. .

2. There is nothing in the constitution of this State which guarantees to the people living within the limits of a municipal corporation the absolute right of local self-government. How far people so situated may be allowed to participate in the choice of officers who are to administer the affairs of the local government is a matter exclusively within the judgment and discretion of the General Assembly.

3. The General Assembly may take from a municipal corporation its charter power respecting the police and their appointment, and may by statute provide for a permanent police for the corporation, under the control of a board of police not elected by the people of the municipality nor appointed or elected by the corporate authorities, but consisting of commissioners appointed in such other manner as the General Assembly may direct.

4. The power to appoint public officers is not purely an executive function, but this power may be exercised by the General Assembly, when not otherwise provided in the constitution, either by naming a given person for the office, or providing the manner in which the officer shall be chosen; and the General Assembly also has authority to provide for the appointment of a number of officers to discharge a given duty, and provide that vacancies in such number may be filled by those remaining in office, thus creating a self-perpetuating body.

5. If the Mayor and Council of the City of Americus have, under the present charter, any authority whatever to appoint a police force, such authority can not be exercised unless the board of police commissioners fails or refuses to provide the city with an efficient police force.

6. A court of equity will, at the instance of citizens and taxpayers of a municipal corporation, enjoin the authorities in charge of the affairs of such corporation from carrying into effect an ultra vires ordinance providing for the election of certain public officers, for the reason that if such officers are elected they will have an apparent demand against the municipality for compensation, which will have to be resisted at the expense of the taxpayers or illegally paid out of the funds of the corporation.

7. The foregoing disposes of all of the questions raised by the demurrer, the answer, or otherwise, which require any discussion. There was no sufficient cause shown for not granting the injunction prayed for, and the judge properly granted the same.

Submitted March 1, — Decided March 11, 1902.

Injunction. Before Judge Littlejohn. Sumter superior court. February 14, 1902.

*James Taylor, Allen Fort & Son,* and *E. A. Hawkins,* for plaintiff in error: Section 45 of the charter of Americus (Acts 1889, p. 961) is unconstitutional, because it contains matter different from what is expressed in the title of the act: Civil Code, § 5771; 49 *Ga.* 233; 51 *Ga.* 639 (2); 61 *Ga.* 20; 70 *Ga.* 284; Id. 721; 90 *Ga.* 326; 94 *Ga.* 768; 104 *Ga.* 846: It deprives the people and the mayor and council of Americus of the right of local self-government: Civil Code, §§ 5698, 5734, 5735. The legislature can not take away the inherent right of local self-government: 118 Ind. 427, s. c. 4 L. R. A. 93; 118 Ind. 382; 41 L. R. A. 624; 90 N. Y. 68; 150 N. Y. 459, s. c. 34 L. R. A. 408; 103 Iowa, 76, s. c. 39 L. R. A. 285; 58 Mich. 213, s. c. 55 Am. R. 675; 15 N. Y. 532; 55 N. Y. 50; 55 Cal. 15; 24 Mich. 44, s. c. 9 Am. R. 103; 28 Mich. 228, s. c. 15 Am. R. 202; 42 Ohio St. 437. Cities existed before Georgia was a State, and have always enjoyed self-government; throughout the constitution they are regulated as to taxation, indebtedness, etc., but the right of self-government is recognized, and it is limited only in a few express incidents: Civil Code, §§ 5722, 5734, 5735, 5778, 5782, 5891, 5893, 5894, 5897. Police commissioners are local officers, and the legislature has no power to deny the people of the city or the mayor and council the right to elect them: 1 Neb. 16; 103 Iowa, 76; 3 Heisk. 682; 54 Mo. 458; 29 Cal. 449; 107 Ill. 372; 53 Ill. 302. See 1 Bl. Com. 128, 158–9; Mechem, Pub. Officers, § 123; Pom. Const. L. (9th ed.) § 151 et seq.; Van

Holst, Const. L. of U. S. 331; Barbour, Rights of Persons and Property, 99; 2 Kent's Com. 1; Cooley's Const. Lim. (5th ed.) 225; 1 Dill. Mun. Corp. (3d ed.) § 9. A law may be within the inhibition of the constitution as well by implication as by expression; and where it is, the court should declare it unconstitutional: 58 Pa. St. 338; 109 N. Y. 389; 4 Am. St. R. 455; 41 L. R. A. 624; 1 Ohio St. 77; 6 Pa. 511; 47 Am. Dec. 480; 55 N. Y. 50; 42 Ohio St. 437; 84 Mich. 228; 41 Neb. 127; 49 Neb. 218; 5 *Ga.* 194; 16 *Ga.* 102; Cooley's Const. Lim. (5th ed.) § 208. The act in question is unreasonable, contrary to natural justice and equity, and is therefore void: 45 How. Pr. 246; 31 Vt. 238; 20 Johns. 103; 15 B. Mon. 642; 2 Kent's Com. 275. The case of *Barlow* v. *Board of Education,* 49 *Ga.* 232, did not involve the question here involved. In no case has an act been held valid in which the legislature appointed police commissioners with power of self-perpetuation. The appointment of local officers of this character is not a legislative function; the legislature has no appointive power except that which is expressly delegated in the constitution: 34 Ind. 197; 1 Ark. 570; 11 Pa. 489; 15 Wheat. 46; Broom's Const. L. 524. The powers which section 45 of the charter purports to confer on the board of police commissioners are in conflict with powers already granted to the mayor and council by the charter, and it is therefore void: 49 *Ga.* 233 (3). The valid part of the act stands: 23 Am. & Eng. Enc. L. 226; 86 *Ga.* 606; 16 Am. St. R. 814; 32 U. S. (Lawyer's ed.) 398; 36 U. S. (Lawyer's ed.) 295 (4, 5). Injunction will not lie: 2 High, Inj. (3d ed.) §§ 1236, 1243 et seq., and cit.; Id. § 1312; Mechem, Pub. Off. §§ 984 et seq., 992, 993; Dillon, Mun. Corp. (2d ed.) §§ 58, 59, 245, 396, 727–738; 12 *Ga.* 23 (3); 17 *Ga.* 56 (1–4), 62; 19 *Ga.* 471; 43 *Ga.* 67 (2); 52 *Ga.* 212 (4); 53 *Ga.* 675; 64 *Ga.* 524, 527; 75 *Ga.* 429, 433; 96 *Ga.* 546; 101 *Ga.* 588; 103 *Ga.* 303 (4); 109 *Ga.* 736, 747; 110 *Ga.* 796, 804; 111 *Ga.* 789, 792; 112 *Ga.* 784; 33 La. Ann. 222; 39 Am. R. 272; 31 U. S. (Lawy. ed.) 402, 405; 18 U. S. (Lawy. ed.) 437, and notes; 19 U. S. (Lawy. ed.) 62; 30 L. R. A. 90, 94; 18 L. R. A. 721; 8 L. R. A. 175, and notes; 6 Johns. Ch. 27; 5 Am. St. R. 494; 2 L. R. A. 505, 508.

*J. H. Lumpkin, Maynard & Lane, W. P. Wallis,* and *Blalock & Cobb,* contra: No variance between title and body of act: 6 *Ga.* 21; 52 *Ga.* 621 (5); 71 *Ga.* 224; 72 *Ga.* 246; 80 *Ga.* 276 (2); 94

*Ga.* 488 (3); 100 *Ga.*743; 104 *Ga.* 544; 110 *Ga.* 795. Principle of local self-government not violated, and no conflict with any constitutional provision: 49 *Ga.* 232; 148 Mass. 375; 15 Md. 375; 21 La. Ann. 309; 29 Ohio St. 102; 38 Kans. 578. Section 43 of the charter, construed in connection with sections 22 and 45, does not confer upon the mayor and council authority to appoint a chief of police, or policemen; no necessity having arisen. For construction of " necessary," see 9 *Ga.* 475, 478, 480. The office of chief of police of the city is a distinctive municipal office created by the charter, under section 45; hence can not be abolished by an ordinance enacted by the mayor and council: 38 *Ga.* 542–546; 100 *Ga.* 743, 748, 752; Abbott's Year Book, 312. An ordinance inconsistent with authority granted by the charter is ultra vires and void: 12 *Ga.* 405; 101 *Ga.* 592; 110 *Ga.* 795 (1). As to injunction: Dillon's Mun. Corp. (2d ed.) § 727 et seq.; High, Inj. (3d ed.) §§ 1241, 1275, 1308–9; 1 Pom. Eq. 347, § 260; 109 *Ga.* 747, 748, and cit.; 110 *Ga.* 804; 96 *Ga.* 553; 43 *Ga.* 67; 86 *Ga.* 607; 51 N. E. Rep. 907; Civil Code, §§ 4913, 4920.

COBB, J. This was an application by Perry and others, as chairman and members of the board of police commissioners of the City of Americus and as citizens and taxpayers of that city, on behalf of themselves and other citizens and taxpayers, to enjoin the Mayor and Council of the City of Americus and Felder and others, the mayor, aldermen, and marshal of that city, from carrying into effect certain ordinances adopted by the mayor and council, which if valid had the effect of abolishing the board of police commissioners and the office of chief of police. The mayor and council and the mayor and marshal individually, by demurrer and answer, showed for cause various reasons against the granting of the injunction. Three of the members of the council, being a minority of that body, filed an answer which in substance set forth that they were opposed to the action of the council as set forth in the ordinances referred to in the petition, that they had never indorsed or acquiesced therein, and were not responsible for any attempt to put the same into execution. At the hearing the injunction prayed for was granted, and this judgment is assigned as error.

1. On November 11, 1889, an act was approved which had the following title: " An act entitled an act to amend, revise, and consolidate the several acts granting corporate authority to the City of

Americus; to confer additional powers upon the Mayor and City Council of Americus; to extend the corporate limits of said city, and for other purposes." Acts 1889, p. 961; City Code of Americus (1900), p. 2. The 45th section of this act provided, in substance, that there should be a board of police commissioners for the City of Americus, consisting of five named persons, two to hold office for six years, two for four years, and the last one named for two years; that at a meeting of such board in December, 1891, and each succeeding two years thereafter, those members of the board of commissioners then in office should elect a commissioner or commissioners to succeed those whose term or terms would then expire. The board was given power to fill vacancies in the same. Each member of the board was required to take an oath, which was set forth. The act then provides that the board of commissioners thus elected and qualified shall have the exclusive power, and it shall be their duty, to appoint a chief of police and such other police officers and policemen as are, or may be, prescribed by city ordinance. The manner in which the board shall conduct its business and the method of keeping a record of its proceedings are then set forth. It is declared that the police force of the city shall consist of a chief of police and such other officers and men as the city council shall by ordinance prescribe. The time when such police officers shall be chosen, and the manner in which they shall be qualified, and certain duties incumbent upon them are set forth, and the section authorizes the board of police commissioners to impose upon them such other duties as they shall see proper. The compensation of the policemen is to be such as shall be prescribed by ordinance, which shall not be increased or diminished during their terms of office, and the board of police commissioners is authorized to suspend or remove from office the officers and policemen elected by it, and in case of suspension the board is authorized to appoint officers to hold during the time that any officer is suspended.

It is contended that this section of the city charter is void, for the reason that it contains matter different from what is expressed in the title of the act. We do not think the section is subject to this objection. The general purpose of the act as indicated in the title is to prescribe the conditions upon which the people of the City of Americus may be allowed, within the limits of that municipality, to exercise the powers of government. It is in effect, though not

in words, an act to create a new charter for the City of Americus. Any matter relating to the subject of the local government to be authorized for the City of Americus is germane to the general purpose of the act as indicated in the title. Under this title the General Assembly could confer upon the city authorities any power that the constitution does not prohibit it from conferring upon a municipal corporation; it could also expressly refuse to confer powers which might have been exercised in the past by other municipal corporations, and could withdraw from the city authorities of Americus any power formerly exercised by them under the provisions of any charter previously granted. It is hard to conceive of a title which would be broader, so far as the affairs of a municipal corporation are concerned, than the title of the act under consideration. If the title had been an act to incorporate the City of Americus, and for other purposes, broad as such a title would be, it would hardly be broader than the one under consideration, and, as said above, the title is in effect one indicating a purpose to create a new charter for the city. It is said, however, that the title indicates that the purpose of the General Assembly was to confer additional powers upon the City of Americus, and that the 45th section of the act really withdraws power formerly lodged with the corporate authorities. If the title did not have in it the words "for other purposes," there might be some plausibility, at least, in this contention, but the presence of the words just referred to, under the well-settled rule in this State, permits the General Assembly to incorporate in the act legislation on any matter which is within the general purview of the act as indicated by the language of the title, although not referred to expressly therein. The general purview of the act under consideration is to amend, revise, and consolidate the several acts granting corporate authority to the City of Americus; and under the right to amend and revise, the General Assembly could take away any authority which had been formerly conferred upon the authorities of the city. See, in this connection, *Mayor* v. *Hughes*, 110 *Ga.* 795; *Welborne* v. *State*, 114 *Ga.* 793 (5).

2. It is contended that the section of the city charter above referred to is invalid, for the reason that the General Assembly had no authority to appoint municipal officers, and that the exercise of the right by the legislature in this instance deprived the citizens of Americus of local self-government. The sections of the constitu-

tion relied upon as granting the right of local self-government are the following clauses in the bill of rights: "All government, of right, originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.  Public officers are the trustees and servants of the people, and at all times amenable to them." Civil Code, § 5678.  "The people of this State have the inherent, sole and exclusive right of regulating their internal government, and the police thereof, and of altering and abolishing their constitution whenever it may be necessary for their safety and happiness." Civil Code, § 5734.  "The enumeration of rights herein contained shall not be construed to deny to the people any inherent rights which they may have hitherto enjoyed." Civil Code, § 5735.  The propriety of creating municipal corporations, what powers shall be conferred upon them when created, the manner in which such powers shall be exercised, and the officers through whom the functions of government in such corporations shall be exercised, are all questions left by the constitution, with few limitations and restrictions, to the wisdom and discretion of the General Assembly.  There is nothing in the constitution restricting the authority of the General Assembly in reference to naming the number and prescribing the authority and mode of appointment of the officers who shall administer the affairs of a municipal corporation created by it.  All of these matters are left absolutely to its judgment.  Whether the affairs of a municipal government shall be lodged in officers elected by the people of the municipality, or by officers appointed by the Governor, or appointed or otherwise chosen by the General Assembly, either by election or by naming them in the act creating the municipal corporation, is a matter left to be determined by the General Assembly in each instance according to the particular needs and peculiar conditions of the locality declared to be a municipal corporation.  See, in this connection, *Churchill* v. *Walker*, 68 *Ga.* 681.  The General Assembly may, if it sees proper, entrust a portion of the powers of a municipal government to officers elected by the people of the municipality, and provide that other powers of government shall be exercised by officers named by the General Assembly in the act providing for the exercise of such powers.  See, in this connection, *Board of Education* v. *Barlow*, 49 *Ga.* 232, in which the act of 1873 (Acts 1873, p. 109), which named certain persons to constitute the board of edu-

cation of the City of Americus, was held to be valid. There is nothing in the provisions of the constitution above quoted, or in any other part of the constitution, which in express terms prohibits the General Assembly from either naming the officers who are to have the control of the affairs of a municipal corporation, or from prescribing the manner in which such officers are to be appointed; nor is there anything requiring that all or a portion of such officers shall be elected by the people of the municipality and chosen in no other way. Neither is there anything in the constitution, when construed as a whole, which by implication would deprive the General Assembly of the right to deal with the matter of the appointment of the officers of a municipality in any manner that it deems best for the interest of the locality incorporated. There is not in the constitution of this State any express guaranty of local self-government for municipal corporations. There is nothing in the constitution from which this right can be legitimately inferred. How far a community shall be allowed to control its own affairs is left to the judgment and discretion of the General Assembly.

The fact that municipal corporations, prior to the adoption of the constitution of 1877, were given the right and were exercising the right to control their own affairs through officers chosen by them would not prevent the General Assembly from taking away this right; there being nothing in the constitution which imperatively requires it to be construed as guaranteeing that this right of local self-government for municipal corporations shall exist absolutely in all cases. The right of the people of a municipal corporation to control its affairs is not an inherent right residing in the people, but is a right dependent for its existence upon legislative will, and how far they shall be given this right is a matter addressed solely to legislative discretion. See, in this connection, Diamond *v.* Cain, 21 La. Ann. 309; State *v.* Hunter, 38 Kan. 578; State *v.* Covington, 29 Ohio St. 102; Com. *v.* Plaisted, 148 Mass. 375; Mayor of Baltimore *v.* State, 15 Md. 376. We are aware that other courts of respectable standing have taken an entirely different view of this matter, and in some instances have held that the right of local self-government is an inherent right in the people of a municipality, and that the legislature can not, in the absence of express authority in the constitution, take away or impair this right in any material or substantial respect. See City of Evansville *v.*

Indiana (Ind.), 4 L. R. A. 93, and cases cited; Rathbone v. Wirth (N. Y.), 34 L. R. A. 408, and cases cited; State v. Moores (Neb.), 41 L. R. A. 624, and cases cited; State v. Denny, 118 Ind. 382. In some of the cases just referred to the ruling is based upon provisions in constitutions which expressly prohibit the legislature from interfering in the matter of the appointment of officers for municipal corporations. In others language somewhat similar to the clause of our constitution last above quoted is construed into a guaranty that the people of a municipal corporation should be permitted to exercise the same powers of local self-government which they were exercising at the time the constitution was adopted; and in other cases, where there was nothing in the constitution in relation to the subject, it was held that the right of local self-government was an inherent right under American institutions, and that the right of the legislature to take it away would not be presumed unless there was in the constitution a provision expressly authorizing the legislature to do so. We think the better view of this matter is that taken by Mitchell, J., in the dissenting opinion in the case of State v. Denny, supra, in the course of which he uses the following language: "The error which lies at the root of the argument by which the unconstitutionality of the acts here in question is attempted to be maintained springs out of the fallacious assumption that the people of a city or town have any interest or inherent right whatever to municipal government, while every atom and vestige of right in those respects, under our system, are such, and only such, as the legislature confers. Upon this baseless assumption, which obliterates and confounds all distinctions between municipal regulation, a creation of legislation, and county and township government, which existed before legislatures were, and which is, and always was, common to every community in the State, the whole fabric of argument adverse to the constitutionality of these acts is builded."

3. While the General Assembly has authority to directly control the affairs of a municipal corporation, the legislative policy of this State has always been in favor of committing to local officers chosen by the people of the various municipalities all such powers of government as are in their nature purely local, and in the exercise of which persons residing at other places in the State are not directly but only remotely concerned. But there are some matters

in connection with the management of a municipality in which the entire people of the State are more or less directly interested, and especially is this true in reference to any matter relating to the administration of public justice and the preservation of the public tranquility, peace and order.    It has therefore not been unusual or uncommon for the General Assembly either to take within its own control the administration of such affairs through the medium of officers selected in other ways than by the voice of the people of the municipality, or to place such restrictions around the manner in which officers in charge of these affairs shall be chosen that the public peace and good order will be subserved, although to some extent withdrawing from the people of the municipality the right to directly choose such officers.    In State *v.* Hunter, supra, Johnson, J., says: "Whatever may be said regarding the policy of placing the police administration of cities in a board of police commissioners who are chosen by State officers rather than through the electors of the cities, there can be no doubt that the legislature has the power to do so.    The constitution imposes no limitations upon the legislature in respect to the agencies through which the police power of the State shall be exercised.    It may be conferred upon the officers of local municipalities chosen by the people resident therein, or, if deemed expedient, it may be vested in officers or persons otherwise selected.    Cities are but agencies of the State, created to aid in the conduct of public affairs.    The functions of cities and their officers are prescribed by the legislature, and it rests in the sovereign discretion of that body to say how much of the police power shall be exerted by the municipality.    Although such power is usually exercised by the local authorities, police administration is not in its nature exclusively local.    The people of the whole State are interested in preserving peace and good order and preventing crime in every city and district of the State, and in protecting the public health and lives of its citizens."

Judge Dillon, in his work on Municipal Corporations (4th ed. § 58), says: "The administration of justice, the preservation of the public peace, and the like, are essentially matters of public concern."    And in section 60 the author says: "And it has been several times determined that the legislature may, unless specially restricted in the constitution, *take from a municipal corporation its charter powers respecting the police and their appointment,* and by

statute directly provide for a permanent police for the corporation, under the control of a board of police not appointed or elected by the corporate authorities, but consisting of commissioners named and appointed by the legislature. Police officers are in fact State or public officers, and not private or corporate officers."

4. It is contended that the General Assembly had no right to appoint the police commissioners by naming them in the act, and that, if it had a right to so appoint them, it had no right to provide that the commissioners thus named should have the power to fill vacancies in their own number, thus making the board a self-perpetuating body. It is insisted that the power of appointment to office is an executive power and not legislative, and that under our constitution (Civil Code, § 5720), which provides that the legislative, executive, and judicial departments of the government shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of the others, except as provided in the constitution, the General Assembly has no power to appoint officers for a municipal corporation, that power not being expressly given by the constitution. While the constitution declares that the three departments of government shall be separate and distinct, this separation is not and from the nature of things can not be total. See *Beall* v. *Beall*, 8 *Ga.* 212 (19). While the power to appoint public officers is in a great many instances lodged in some officer of the executive department, this is not now, and never has been, true in reference to all public officers. The history of this State will show that public officers have been chosen by the General Assembly and also have been chosen by various judicial officers of the State. This court has, and always has had, the power to appoint its own officers, and a similar power is vested in the judges of many inferior tribunals. There is nothing in the legislative or judicial history of this State which would indicate that the power of appointment to office was to be treated as purely executive in its nature. An examination of the acts passed by the General Assembly from the earliest history of the State down to the present time will show that in many instances the power to appoint officers has never been vested exclusively in the executive department, but has been from time to time vested in the judicial department, and has been exercised, directly or indirectly, by the legislative department; and there are many

instances of legislation where powers apparently belonging to one department have been held properly exercisible by another department, for the reason, as stated in *Beall* v. *Beall*, that the separation of the three departments can not, from the nature of things, be total. See, in this connection, *Wilson* v. *State*, 69 *Ga.* 224; *Johnson* v. *Jackson*, 99 *Ga.* 389; *Bowen* v. *Clifton*, 105 *Ga.* 459; *Phinizy* v. *Eve*, 108 *Ga.* 360; Mayor of Baltimore *v.* State, supra; *Board of Education* v. *Barlow*, supra. If the General Assembly may exercise the power to appoint an officer by providing the manner in which such officer shall be chosen, we see no good reason why it can not exercise this power directly by naming the officer in the act creating the office. The power to create the office and the power to provide for the filling of the office by appointment carry with it not only the authority to name the person who shall be the officer, but also the power to provide how his successor shall be appointed; and the method of the selection of a successor to an officer whose duties are connected with the administration of the affairs of a municipal government is, like all other matters in relation to the affairs of such corporation, entirely within the control of the General Assembly. If in their judgment in a particular case the persons named by them as officers in charge of a particular duty are proper persons to be entrusted with the choice of their own successors, there is nothing in the constitution of this State to prevent the General Assembly from so providing, although so doing has the effect of making the board of municipal officers thus created a self-perpetuating body. Whether this is wise or proper or expedient is to be determined by the General Assembly according to the circumstances of each case. It is a matter with which the courts have no concern and in which they can not interfere.

5. It is said that even if section 45 of the charter is a valid provision of law, still under section 43 the mayor and council have authority to appoint a police force to assist the marshal in the discharge of his duties. Section 43 (City Code of Americus, 1900, pp. 17–18) confers upon the mayor and council the usual corporate powers in reference to streets, sidewalks, drains, etc., the power to regulate markets, to abate nuisances, to regulate the keeping of gunpowder and other combustibles, to provide places for the burial of the dead, to provide and regulate a city market, to make regulations in reference to danger or damage by fire, to protect the property and

persons of the citizens, and to preserve peace and good order in the city. The section then provides that the authorities have power " for this purpose to appoint, when necessary, a police force to assist the marshal in the discharge of his duty; to prescribe the powers and define the duties of the officers appointed by the mayor and council of Americus, to fix their terms of office and compensation," etc. If the charter had not contained section 45 in reference to the board of police commissioners, the language of section 43 might be sufficient to give the mayor and council absolute control in regard to the matter of police; but the two provisions of the charter are to be construed together, and as under section 45 the board of police commissioners is given exclusive control of the matter of police, the power of the mayor and council in reference to the police, if it exists at all under section 43, is subordinate to the authority of the board of police commissioners; and so long as the board discharges the duties imposed upon it by the statute and proper ordinances of the city, the mayor and council have no control whatever over the police of the city under the provisions of section 43, for the simple reason that the right to exercise any authority under that section is conferred only whenever it becomes necessary, and the necessity for the exercise of this power can never arise so long as the board of police commissioners is discharging its duties and the mayor and council are providing moneys which are necessary for such board to efficiently discharge the duties imposed upon it by law. Taking the charter as a whole, it was the intention and purpose and evidently in the contemplation of the General Assembly that the mayor and council and the board of police commissioners should co-operate with each other in a common purpose to preserve the peace and good order of the city by providing an efficient police force, and it was never for a moment contemplated that the limited authority given to the mayor and council in reference to the police force should ever be used to obstruct the board of police commissioners in the discharge of its duty, much less to abrogate entirely the authority of that board. The mayor and council have a right, under the charter, to provide a police force for the city to assist the marshal whenever the necessity arises, but the mayor and council must not themselves bring about this necessity. The necessity for their action must arise from the fact that, for some reason independent of the action of the

mayor and council, a condition of affairs has arisen where the board of police commissioners has failed or refused to discharge the duties imposed upon it, or a peculiar condition of affairs has arisen where for the time being and temporarily the police force selected by the board of police commissioners is not adequate for the preservation of peace and order in the community. The charter does not contemplate that the mayor and council shall ever take such action as will render inefficient that department of the municipal government represented by the board of police commissioners. The mayor and council can exercise no power under section 43 of the charter, except in that extreme case that might but probably will never arise, where, after the mayor and council have done all that the charter requires in reference to the police and their compensation, the board of police commissioners fails or refuses to discharge the duties incumbent upon it. A cordial co-operation between the mayor and council and the board of police commissioners can have but one result, and that is, an efficient police force in the City of Americus, and such co-operation and such a result were intended to be accomplished by the charter provisions. It was never for one moment contemplated by the General Assembly that the mayor and council should impede or obstruct the board of police commissioners in the proper discharge of its duties, nor that under the provisions of section 43 of the charter the mayor and council should repeal section 45, and this is really what is attempted by the ordinances under review in this case.

6. It is said, though, that even if it be conceded that the action of the mayor and council is illegal, and that they had no authority to pass the ordinances, a court of equity will not interfere in the matter, for the simple reason that the only question arising is as to who would be the lawful police officers of the city, and this is a matter that can be settled by a court of law by quo warranto or other legal proceeding. While equity will not enjoin the action of a municipal corporation while proceeding within the limits of its well-defined powers, it has jurisdiction to restrain acts in excess of this authority and to enjoin acts which are ultra vires. The petition charges that the mayor and council have passed ordinances which in effect abolish the board of police commissioners altogether, and have by ordinance provided for a complete police force headed by the marshal of the city, and that they are attempting to carry these ordinances

into execution, and have up to the present time so far carried them into execution as that the mayor has refused and still refuses to recognize the chief of police elected by the board of police commissioners as a police officer of the city. The ordinances, so far as they attempt to abolish the board of police commissioners and to deprive it of the powers which the charter conferred upon it, are ultra vires and void, and there is nothing in the petition to show that the board of police commissioners is either failing or refusing to exercise the powers confided to it by the General Assembly. On the other hand it appears, not only from the petition but from the answer itself, that the board is attempting to exercise those very powers and would exercise them but for the obstructions placed in its way by the mayor and council. Under such circumstances the mayor and council have no authority whatever to elect a police force, and the election of such officers would bring about the question as to whether the persons so elected were entitled to demand compensation from the city; and while, under the view we have taken of the case, such persons would have no right to receive compensation, the fact that they were elected and were attempting to discharge the duties of the offices for which they were chosen would result either in the money in the city treasury being illegally used in paying their claims, or in requiring the money of the municipality to be used in defeating their claims for compensation; and to prevent this any taxpayer would have a right to appeal to a court of equity to enjoin the mayor and council from proceeding further to do any act which would have the effect to bring about either result. The plaintiffs bring their petition, not only as members of the board of police commissioners, but also in their capacity of citizens and taxpayers; and in this latter capacity they are entitled to be heard, the case made being one where the municipal authorities are going beyond their powers and doing acts which, if carried into effect, would either result in a misappropriation of public funds or entail upon the taxpayers of the city the expense of litigating with persons who might hold claims against the city under the invalid ordinances. See, in this connection, *Mayor of Macon* v. *Hughes*, 110 *Ga.* 804, and cases cited; *Mitchell* v. *Lasseter*, 114 *Ga.* 275, and cases cited; 2 High, Inj. (3d ed.) §§ 1236, 1241, 1243.

7. There are other questions raised by the demurrer and answer, but the above, we think, disposes of all which are of such character

as to require discussion. No sufficient cause was shown either by the demurrer or answer why the injunction prayed for should not be granted, and the court did not err in granting the same.

*Judgment affirmed. All the Justices concurring, except Little, J., absent.*