No. 66.—Martin Frederick and others, plaintiffs in error, *vs.* The City Council of Augusta, defendant.

[1.] A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created.

[2.] Where, by the terms of the charter, a municipal corporation was vested with "full power and authority to make such assessments on the inhabitants of the city, or those who hold taxable property therein, for the safety, benefit, convenience and advantage of the said city, as shall appear to them expedient: *Held*, that an assessment of a tax of one half of one per cent. on the value of the real estate within the corporate limits of the city, by the City Coun-

cil, for the purpose of constructing a canal for the better securing an abundant supply of water for the city, was not a violation of the charter, nor contrary to the laws of the land.

In Equity, decided by Judge HOLT, in Richmond Superior Court, September Term, 1848.

On the 15th of March, 1845, the " City Council of Augusta," passed an ordinance " to provide for the construction of a canal for manufacturing purposes, and for the better securing an abundant supply of water for the city." The second section of this ordinance provided, that " there be assessed and collected, for the current year, and there is hereby assessed for said year, on all the real estate in the city of Augusta, subject to taxation, a tax of one fourth of one per cent. on the present valuation thereof, and that the clerk of council forthwith make out and deliver to the collector and treasurer of said city, a digest of all the taxable real estate in the city of Augusta, and that the said collector and treasurer, immediately thereafter, proceed to collect the said tax, and upon the receipt thereof, deliver to each tax payer a transferable scrip or certificate of such payment, securing to such tax payer, and his or her assigns, an interest in the said canal, proportionable to the amount of tax so by him or her paid," &c.

The 3d section provided for the appointment of nine canal commissioners, among other things, "to locate the line of said canal along the high ground between Jackson and Washington Streets, south of the Beaver Dam, and provide for the discharge of the same into the river at or near the northern extremity of East Boundary Street."

The ordinance further provided, among other things, for the issuing of bonds by the City Council, for the construction of the canal.

By an amendatory ordinance, passed 7th July, 1845, the provision " for the discharge of the water of said canal into the river, at or near the northern extremity of East Boundary Street, was repealed, and the commissioners, with the advice of the engineer, were authorized to provide for its discharge, " at or near Hawk's Gully, or at such other point within the corporate limits of the city, as the commissioners aforesaid, or a majority of them, with the advice of the engineer aforesaid, may deem best adapted for an outlet for the water of said canal."

On 27th December, 1845, was approved an Act of the Legislature of Georgia, " to incorporate the proprietors of the Augusta canal, and to confirm certain ordinances of the City Council of Augusta, therein mentioned, and to punish those who may injure their property," by which it is declared that all persons, then holding or who might hereafter hold scrip issued under the said ordinance, should be a body corporate, by the name and style of the Augusta Canal Company.

On the 3d of October, 1846, the City Council of Augusta passed an ordinance, levying " a tax of one half of one per cent. on the value of all real estate in the city of Augusta," for the year 1846, and for each succeeding year, until all the bonds issued under the ordinance of 15th March, 1845, with the interest thereon, shall be paid.

It was further provided, " if any portion of such tax remain unpaid at the time hereby appointed for the collection of the same, the collector and treasurer shall forthwith cause the issue of executions against the persons in default, and have the same collected by levy, in the same way, &c."

On 17th April, 1848, Martin Frederick, John W. Houghton, Thomas J. Walton, Philip McGran, Benjamin F. Chew, David L. Curtis and John Phinizy, filed their Bill in Equity, in Richmond Superior Court, charging the foregoing facts, and farther, that they were owners of real estate in the city of Augusta, upon which taxes had been assessed, agreeably to the provisions of the last ordinance, and executions issued against them.

The bill charged, that it was not competent for the Legislature, constitutionally, to make them members of a corporation without their consent, and subject them to liability as such, and that they never consented to become members of said corporation—farther, that the City Council had no authority by law, to levy taxes on real estate, to be expended without the corporate limits, whereas the canal was constructed from a point called " Bull's Sluice," some seven or eight miles from said city.

The bill charged that said canal had not been constructed in accordance with the provisions of said ordinance, because it prescribed that it should be constructed along the high ground between Jackson and Washington streets, south of the Beaver Dam ; whereas the commissioners have stopped said canal at the street above the Upper Market, so that the owners of real estate

in the middle and lower part of said city, have been deprived of whatever advantage might have resulted from the construction of said canal.

The bill farther charges, that the City Council have no authority to levy a tax upon one species of property, and not to include all upon which taxes are levied for the support and government of said city.

The bill prayed an injunction, which was granted.

The defendants answered, admitting the allegations in the bill as to the facts charged, except as to the location of the canal. They insist that the canal has been constructed as described in the ordinance, so far as it is completed, and has not been completed the whole distance, simply from the want of funds.

Upon coming in of the answer, a motion was made to dissolve the injunction.

1st. Because there is no equity in the bill.

2d. If there is any equity, it has been fully sworn off in the answer.

The Court below sustained the motion and dissolved the injunction, to which decision exceptions were filed, and error has been assigned thereon.

C ONE, for the plaintiffs in error, submitted the following points and authorities :

1st. Corporations can exercise no power other than that specially granted to them by their charter of incorporation, or what are incidental to its very existence.   4 *Wheat.* 518.   4 *Condensed R.* 526.   2 *Cranch,* 127.   4 *Peters,* 152.

2d. The power to raise money to construct this canal, is not granted by their charter of incorporation.   *Ordinances of City Council,* 76, 78, 87.   3 *Wend.* 525.

3d. If the ordinances of the City Council, authorizing the borrowing of money for the construction of the canal, and the levying of taxes for that purpose, were illegal, a subsequent Act of the Legislature cannot make them valid.   3 *Kelly,* 215.

If the Legislature, by the Act of 1845, have granted the power in question, such grant is unconstitutional and void.   3 *Dallas,* 386.   12 *Wheat.* 266.   2 *Peters,* 380.   8 *Peters,* 110.   3 *Kelly,* 209.

Frederick and others *vs.* The City Council of Augusta.

The Legislature possess no power to incorporate individuals against their will.  2 *Mass.* 269.  10 *Peters,* 167.  7 *Do.* 184.  1 *Green.* 81.

The City Council possess no power to levy the tax on one spe cies of property to the exclusion of all others.

A. J. MILLER, for the defendants in error.

1st. The defendants had full authority to pass the ordinance complained of.  *Act of* 31*st January,* 1798.  1 *Nott & McCord,* 528.

2d. If such of said ordinances as were passed prior to the Act of 27th December, 1845, were invalid, the said Act made them and the subsequent ordinance, of force and valid.  1 *Nott & McCord,* 227.

3d. The defendants had authority to assess, collect, borrow, and appropriate money for the purpose specified in said ordinance. *Act of* 31*st January,* 1798.    *Act of* 30*th Dec.* 1836.    19 *Pickering R.* 485.    23 *Pick. R.* 71.    3 *Metcalf 's R.* 163.    3 *Yeates's Rep.* 491.

*By the Court.*—WARNER, J. delivering the opinion.

The complainants filed their bill in the Court below, to enjoin the collection of a tax assessed upon their real estate, in the city of Augusta, by virtue of an ordinance passed by the City Council for that purpose.

On the coming in of the defendant's answer, a motion was made in the Court below, to dissolve the injunction, on two grounds—

1st  Because there was no equity in the bill.

2d. If there was any equity in the bill filed by the complainants, it had been fully denied by the answer.  The Court below dissolved the injunction, whereupon the complainants excepted, and now assign the same for error in this Court.

The counsel for the plaintiffs in error insists in his argument, that the City Council have no power or authority, under the charter and the laws of the land, to assess and collect the tax in question.

By the 22d section of the 1st article of the Constitution of this State, it is declared, "The General Assembly shall have power to make all laws and ordinances which they shall deem necessa-

ry and proper, for the good of the State, which shall not be repug-
nant to this Constitution." *Prince*, 905. The same provision
was contained in the Constitution of 1789. *Marbury and Craw-
ford's Dig.* 15. On the 31st January, 1798, the city of Augusta
was incorporated. The power intended to be delegated to the
corporate authorities of the city, by the Legislature, and the reasons
therefor, may be gathered from the preamble to the Act, which
recites, " Whereas, from the extent and population of the town
of Augusta, its growing importance, both with respect to increase
of inhabitants and diffusive commerce, it is indispensably neces-
sary that many regulations should be made, for the preservation
of peace and good order within the same : And whereas, from
the many weighty and important matters that occupy the atten-
tion of the Legislature at their general meeting, it has hitherto
been found inconvenient, and may hereafter become more so, for
them to devise, consider, deliberate on, and determine all such
laws, and regulations, as emergencies, or the *local circumstances*
of the said town may from time to time require, be it enacted,
&c." *Marbury and Crawford's Dig.* 136. It was manifestly
the intention of the Legislature, to delegate to the corporate au-
thorities of the city of Augusta, the power and authority to make
such laws and regulations for the inhabitants of the city, as
" contingencies, or the *local* circumstances" thereof, might from
time to time require.

The Legislature, under the Constitution, as we have seen, had
the power to make all laws and ordinances which they might
deem necessary and proper, for the good of the State, not repug-
nant to the Constitution.

What power and authority did the Legislature delegate to,
and confer upon the City Council of Augusta, by the Act of 1798 ?
The Act declares, that the City Council of Augusta, "shall be
vested with full power and authority, from time to time, under
their common seal, to make and establish such by-laws, rules and
ordinances, respecting the harbor, streets, public buildings, work-
houses, markets, wharves, public houses, carriages, wagons, carts,
drays, pumps, buckets, fire engines, the care of the poor, the regula-
tion of disorderly people, negroes, and in general, any other by-
law or regulation that shall appear to them requisite and nec-
essary, for the *security, welfare,* and *convenience* of the said city,
or for preserving peace, order and good government within the

same, and the said City Council shall also be vested with full power and authority, to make such *assessments* on the inhabitants of Augusta, or those who hold taxable property within the same, for the *safety, benefit, convenience and advantage of the said city, as shall appear to them expedient.*"

Had the City Council of Augusta the power and authority, under their charter, to make and establish the ordinance, for the assessment of the tax in question, on the real estate of the complainants, located within the limits of the city, as stated in the record? We are of opinion, the City Council had such power and authority, under their charter of 1798, but if they did not, the Act of 27th December, 1845, expressly adopts and confirms the ordinances of the City Council, in regard to the construction of the canal, which, in our judgment, it was competent for the Legislature to have done. *Truchelut vs. The City Council,* 1 *Nott and McCord's Rep.* 227. But it is contended, the tax assessed by the City Council on the property of the complainants, is against common right, and the principles of the social compact, and operates *oppressively.* The answer to this argument is, that the City Council of Augusta had the authority delegated to them by the sovereign power of the State, to make the assessment on the inhabitants of the city.

When the law-making power acts within the scope of its delegated authority, the Courts cannot interfere. It is the duty of the judicial tribunals of the country, to *execute* and *enforce* all *constitutional* laws, and not to *make* them. The remedy against the effect of oppressive legislation, delegated to municipal corporations, is in the hands of the people, or their representatives. It was competent for the Legislature to have *restricted* the power of legislation by the corporation, in its charter, and the inhabitants of the city elect their own officers, whose ordinances are presumed to express the will of the majority.

[1.] A corporation, says Chief Justice Marshall, *(in Dartmouth College vs. Woodward,)* is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created. 4 *Wheat.* 518. 4 *Cond. R. N. S.* 543.

[2.] The power delegated by the General Assembly to the City Council of Augusta, as appears by their charter, is to make assessments on the inhabitants of the city, or those who hold taxable property therein, for certain specific objects, (to-wit :) for the *safety, benefit, convenience and advantage of the said city, as shall appear to them expedient.*

In pursuance of the authority thus delegated to them, the City Council have adjudged by their ordinance, that it is for the safety, benefit, convenience and advantage of the city of Augusta, that the canal mentioned in the record, should be constructed for the purpose of better securing an abundant supply of water for the city, as well as for manufacturing purposes, and have made an assessment upon the real estate, within the limits of the city, of one half of one per cent. on the value thereof, to enable them to accomplish that object.

The inhabitants of the city are to be furnished with an abundant supply of water, to protect their property against fire, and for other purposes, and the payment of the tax assessed by the City Council on the property of the inhabitants, so to be protected, is the means by which the contemplated benefits are to be enjoyed by them. We see nothing in the ordinance which is *unreasonable*, or which violates the charter, or the laws of the land.

It was urged on the argument, that to compel the complainants to pay the tax, would have the effect to make them stockholders in the canal company against their consent. It is true, when they shall have paid the tax, they will be entitled to receive a certificate of such payment, which will secure to them, and their assignees, an interest in the canal stock ; but it is at the option of the complainants, whether they will take a certificate, and become stockholders in the canal company—this part of the ordinance was intended for their benefit, and they may renounce it if they should think proper to do so. The assessment of the tax is not made on their property, as *stockholders* in the canal company, but on their property as *citizens*, owning real estate, within the corporate limits of the city. Whenever the complainants shall be made stockholders in the canal company, against their consent, and an assessment shall be made on their property, as such stockholders, then it will be time enough to decide whether they can be made stockholders in the canal company, against their

MILLEDGEVILLE, NOVEMBER TERM, 1848.   569

consent.   With regard to the liability of the complainants to pay the assessment of the tax as *citizens*, owning real estate within the corporate limits of the city of Augusta, the same principle prevails as in the community at large, that the acts of the *majority*, in cases within the charter powers, bind the *whole*.   2 *Kent's Com.* 293.   *The King vs. Buston*, 3 *Term Rep.* 592.

In any view which we have taken of this case, as presented by the record before us, we are of the opinion, the judgment of the Court below should be affirmed.